## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT HAINEY, *et al.*,

      Plaintiffs,

    v.

SAG-AFTRA HEALTH PLAN, *et al.*,

      Defendants.

\* \* \*

    Civil Action No. 8:21-cv-02618-PX

## MEMORANDUM OPINION

In this ERISA[1] case, Defendants the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") Health Plan and the Board of Trustees (the "Board") for the SAG-AFTRA Health Plan move to dismiss the Amended Complaint and strike the demand for jury trial. ECF No. 18. Plaintiffs Robert and Rosemary Hainey ("the Haineys") have responded to the motion; they also separately move to strike certain exhibits and for leave to file a Second Amended Complaint. ECF Nos. 24 & 31. The motions are fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' motion to dismiss is DENIED IN PART AND GRANTED IN PART and Plaintiffs' motions to strike and for leave to file the Second Amended Complaint are DENIED.

### I. Background

In 2012, two unions, the Screen Actors Guild ("SAG") and the American Federation of Television and Radio Artists ("AFTRA"), merged to become a single union representing actors, broadcast journalists, recording artists, and other media professionals. SAG-AFTRA, *About*, https://www.sagaftra.org/about (last visited Apr. 17, 2023). In 2017, the Union also merged its

---

[1] ERISA is the common acronym for the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.

previous health plans into one, the new SAG-AFTRA Health Plan.  ECF No. 17 ¶ 9; *see* ECF No. 18-1 at 7.  The SAG-AFTRA Health Plan is an employee welfare benefit plan covered under ERISA.  *Id.* ¶ 10.  The Defendant Board of Trustees acts as the Plan administrator.  *Id.* ¶ 13.

Between 1973 and 1995, Mr. Hainey was a member of AFTRA.  *Id.* ¶ 21.  AFTRA offered certain postretirement benefits to union members, including Medicare supplemental health coverage to those aged 65 years or older who met certain eligibility requirements.  *Id.* ¶¶ 22–23, 31.  In 1995, Mr. Hainey received an earnings statement from AFTRA confirming that he met the eligibility requirements to obtain postretirement benefits.  *Id.* ¶ 34.  For the next twenty years, Mr. Hainey worked in a position unaffiliated with AFTRA until 2016, at which point he applied to retire and receive his AFTRA pension.  *Id.* ¶¶ 46–47.

After Mr. Hainey retired, he and his wife applied for health coverage under the SAG-AFTRA Health Plan for the 2017 calendar year.  *Id.* ¶¶ 48–50, 65.  Under the terms of the Plan at that time, Mr. Hainey received supplemental Medicare coverage, and Mrs. Hainey received primary health insurance as a dependent spouse.  *Id.* ¶ 52; *see* ECF No. 18-1 at 10.  The Haineys retained the SAG-AFTRA Health Plan from January 1, 2017, through December 31, 2020.  *Id.* ¶ 65.

In the summer of 2020, the Board announced several anticipated changes to the Plan slated to go into effect in January 2021.  *Id.* ¶¶ 65, 70; *see* ECF No. 18-1 at 10.  Pertinent to retirees like Mr. Hainey, the 2021 Plan would eliminate supplemental Medicare coverage and instead provide eligible enrollees with the option to purchase individual insurance on a private Medicare exchange offered by an online platform called Via Benefits.  *Id.* ¶ 67.  These eligible enrollees are termed "Senior Performers"; they are retirees, aged 65 or older, receiving a SAG or AFTRA pension benefit, with sufficient years of covered employment.  *Id.* ¶ 48; *see* ECF No.

18-1 at 10.  Those who opted into coverage through Via Benefits would receive a monthly subsidy through a Health Reimbursement Account ("HRA").  *Id.* ¶ 66.

In the following months, the Board sent Plaintiffs a series of letters and other materials about the 2021 Plan.  *See* ECF Nos. 18-10, 18-11, 18-12.  The Haineys do not dispute having received these communications.  *See* ECF Nos. 24 & 29.  In August 2020, the Haineys received a newsletter that detailed "big changes" to how SAG-AFTRA would "offer coverage for our Retirees."  ECF No. 18-10 at 12.  The newsletter informed retirees with "Senior Performer" status that they would "move into our SAG-AFTRA Health Plan / Via Benefits program" where "you can shop with Via Benefits for a range of plans and supplement your Medicare coverage." *Id.*  The newsletter also explained that for those transitioning to the Via Benefits program, "current SAG-AFTRA Health Plan premiums and coverage will end on December 31, 2020." *Id.* at 15.  The newsletter repeatedly encouraged members to obtain more information through the Plan's website or through its call center and included website links which directed users to a more robust description of the 2021 Plan.  *See, e.g.*, *id.* at 10, 11, 17.

On October 12, 2020, Defendants sent a personalized letter to Mr. Hainey that also explained the upcoming Plan changes.  ECF No. 18-11.  The letter stated that, "[b]ased on our evaluation" of certain eligibility requirements, "you will move into our new SAG-AFTRA Health Plan /Via Benefits Program."  *Id.* at 2.  In bold type, the letter advised: "You'll need to take action.  Here's what you need to know and do."  *Id.*

Four days later, on October 16, 2020, Mr. Hainey submitted a grievance letter to the Plan through its online portal and via first class mail (the "October 2020 grievance" or "grievance"). ECF No. 17 ¶ 72.  In the grievance, Mr. Hainey expressed his concerns and doubts about the

legality of the proposed Plan changes. *Id.*; *see* ECF No. 1-2 at 7–12.[2]  Mr. Hainey wrote that

from 1974 to 1995, his employers "contributed 21 years of [his] deferred income to the Taft-

Hartley Fund," and that, as a result, he retained a "running balance" of more than $244,000 in a

"welfare benefit trust."  ECF No. 1-2 at 7.  In Mr. Hainey's view, the 2021 Plan—which now

would require him to purchase supplemental Medicare coverage through Via Benefits—

somehow "unlawfully divest[ed]" him of those earlier contributions.  *Id.* at 8.

The grievance also requested copies various records from the Board, to include Plan

documents, annual reports, recent financial reports and audits, and information regarding Mr.

Hainey's employer contributions to AFTRA's welfare benefit fund for the 1974–1995 period.

ECF No. 17 ¶ 73; *see* ECF No. 1-2 at 11–12.  On October 19, 2020, Mr. Hainey sent separate

correspondence requesting copies of collective bargaining agreements covering his 1974–1995

employment, Plan trust agreements, and additional regulatory and financial filings.  *Id.* ¶ 75;

ECF No. 1-2 at 17.

Defendants did not respond to the grievance or the October 19 correspondence.  Mr.

Hainey next submitted written "reminders" to Defendants on November 20, 2020, December 21,

2020, and January 20, 2021.  In each letter, Mr. Hainey reiterated his previous request for

documents.  *Id.* ¶ 76.

Although Mr. Hainey never enrolled in the 2021 Plan, Mrs. Hainey had attempted

separate enrollment through the Plan's online portal.  *Id.* ¶ 87.  Mrs. Hainey certified that she

was not employed or otherwise able to obtain health coverage through another employer, thus

indicating she was eligible for primary coverage through Mr. Hainey.  She completed similar

certifications again in January and early February 2021 to demonstrate her eligibility.  *Id.* ¶¶ 94–

---

[2] Plaintiffs continue to refer to documents included with their original Complaint, as cited here.

96. Mrs. Hainey also prepaid premiums for coverage through June 2021.  *Id.* ¶ 91.  But on February 23, 2021, Mrs. Hainey's coverage was discontinued because Mr. Hainey had not enrolled in the Plan.  To date, the Plan has not returned those premiums to Mrs. Hainey even though it canceled her coverage.  *Id.* ¶¶ 97, 103.  Once the Plan notified Mrs. Hainey that she would not be covered for 2021, she had to purchase a replacement plan at a higher cost and with less coverage.  *Id.* ¶ 99.  The Plan also refused to cover a long-term procedure for Mr. Hainey that straddled the 2020–2021 Plans.  *Id.* ¶ 112.

On October 12, 2021, the Haineys filed this lawsuit, challenging the legality of the Plan changes, the cancellation of Plan benefits, and other alleged malfeasance on the part of the Plan. ECF No. 1.  After a premotions conference with the Court,[3] the Haineys filed an Amended Complaint on January 21, 2022.  ECF No. 17.  Defendants timely moved to dismiss the Amended Complaint.  ECF No. 18.  In response, the Haineys separately moved to strike Exhibits 1 through 4 and 6, attached to the Defendants' motion (ECF No. 24), and after Defendants replied, the Haineys were granted leave to file a sur-reply.  ECF Nos. 26 & 29.  While these motions were pending, the Haineys moved for leave to file a Second Amended Complaint, which is also fully briefed.  ECF Nos. 31, 34 & 38.

The Court turns first to the Haineys' motion to strike the attachments to Defendants' motion to dismiss.

## II.    Motion to Strike

Defendants attach several exhibits to their motion, including the 2021 Plan's Summary Plan Description ("SPD") and Plan documents for the 2021 HRA; the 2017 Plan's SPD; the AFTRA Plan's 2011 SPD and July 2016 Summary of Material Modifications; and Plan

---

[3] This matter had been originally assigned to the Honorable Paul W. Grimm.  Upon Judge Grimm's retirement, the matter was transferred to this Court on Dec. 14, 2022.

documents for the 1987 AFTRA Health Plan.  ECF No. 24-1 at 9–10; *see* ECF Nos. 18-4, 18-5, 18-6, 18-7, 18-9.  Plaintiffs argue that the documents should be stricken because Defendants never furnished them in advance of litigation.  *Id.* at 10.  Defendants respond that Exhibits 1 and 2 were supplied to Plaintiffs before they filed the Amended Complaint, and all documents are otherwise integral to the claims.  ECF No. 26 at 11 n.3.

At the motion to dismiss stage, the Court may consider documents that are "explicitly incorporated into the complaint by reference" or otherwise integral to the complaint, provided no dispute exists as to the document's authenticity.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted).  A document is considered integral where the complaint "relies heavily upon its terms and effect."  *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (finding integral a document that by its "very existence, and not the mere information it contains, gives rise to the legal rights asserted").

Plaintiffs do not contest the authenticity of these documents.  Further, as to the 2021 Plan SPD, Defendants assert that the SPD functions as the SAG-AFTRA Health Plan's "governing document."  ECF No. 18-1 at 11 n.2; *see Kress v. Food Emps. Lab. Rels. Ass'n*, 391 F.3d 563, 566 (4th Cir. 2004) (construing terms of SPD because it was the "governing plan document").  Because the Amended Complaint squarely challenges the 2021 Plan's reach and effect, the SPD is integral to the claims.  *Goines*, 822 F.3d at 166; *see Hooker v. Tunnell Gov't Servs.*, Inc., 447 F. Supp. 3d 384, 391 (D. Md. 2020) (finding "a court may properly consider ERISA plan documents on a motion to dismiss").  Likewise, because the Haineys appear to challenge the manner in which the 2021 Plan HRA and a purported prior health spending account work in light of past promises, the remaining exhibits are also integral to the claims.  ECF No. 17 ¶¶ 265–268;

*see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d ed. 2004) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, … the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case."). Accordingly, the motion to strike is denied.

The Court next turns to Defendants' motion to dismiss the Amended Complaint.

### III.   Motion to Dismiss

#### A.  Standard of Review

Defendants argue that certain claims must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court may grant a motion to dismiss on 12(b)(1) grounds "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).

Defendants also urge dismissal of other claims for legal insufficiency under Rule 12(b)(6). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). The Court may consider a document attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document['s] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th

Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th

Cir. 2004)) (internal quotation marks omitted).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks omitted).  Bare legal conclusions couched as

factual allegations will not suffice.  *See Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th

Cir. 1989).  "A plaintiff must provide sufficient detail to show that he has a more-than-

conceivable chance of success on the merits."  *Upstate Forever v. Kinder Morgan Energy

Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 2736

(2020).[4]

### B.  Analysis

The Amended Complaint alleges a panoply of various ERISA violations.  Counts II

through VI aver that the Board of Trustees breached its fiduciary duties or the Plan otherwise

violated ERISA for failing to respond to Mr. Hainey's grievance letter (Count II), for wrongful

cancellation of coverage (Counts III & IV), for refusing to supply requested documents within 30

days (Count V), and maladministration of the Plan (Count VI).  ECF No. 17.  Count I articulates

a claim for common law breach of implied contract and unjust enrichment stemming from

Defendants' supposed breach of Plan terms and conditions as a result of 2021 Plan changes.

Defendants urge dismissal of Counts I through IV because the Amended Complaint

simply fails to make plausible the claims.  Counts V and VI, say Defendants, must be dismissed

---

[4] Although the Court construes the pleadings generously, as is proper when reading pleadings written by laypeople, the Court need not ignore that Mrs. Hainey is a lawyer who presumably has at least some basic knowledge about pleading plausible allegations.  ECF No. 18-1 at 16; *see Polidi v. Bannon*, 226 F. Supp. 3d 615, 617 n.1 (E.D. Va. 2016) (collecting cases).

because Plaintiffs lack standing to bring the claims.  All counts concern the scope of duties that Defendants owed to the Haineys under ERISA, and so the Court begins with the statute.

ERISA provides comprehensive statutory protections "designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).  The statute sets out "standards of conduct, responsibility, and obligation[s] for fiduciaries of employee benefit plans" on behalf of participants and beneficiaries.  *Peters v. Aetna Inc.*, 2 F.4th 199, 215 (4th Cir. 2021), *cert. denied sub nom.  OptumHealth Care Sols. v. Peters*, 142 S. Ct. 1227 (2022) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987)).  Through ERISA's enactment, Congress "[struck] a difficult balance between employee rights and available employer resources."  *Gable v. Sweetheart Cup Co.,* 35 F.3d 851, 859 (4th Cir. 1994).

Pertinent here, ERISA requires that "[e]very employee benefit plan" be "established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  This instrument "while regulated, [is] governed by established principles of contract and trust law."  *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996) (citations omitted).  In the context of "welfare benefit" plans, such as the challenged 2021 Plan, the Plan may be amended over time or terminated entirely, unless the organization establishing the plan "voluntarily undertak[es] an obligation" to provide vested benefits.  *Gable*, 35 F.3d at 855 (citing 29 U.S.C. § 1051(1)); *see also Bellon v. PPG Emp. Life & Other Benefits Plan*, 41 F.4th 244, 252 (4th Cir. 2022).  Accordingly, where a plan participant alleges that historical welfare plan benefits have vested, the participant bears the burden of demonstrating he has received vested benefits.

ERISA also sets out clear protections for plan participants.  Section 502(a)(1)(B) provides a private cause of action for a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Separately, under § 502(c)(1)(B), a participant or beneficiary is entitled to receive certain plan documents upon request.  Failure to furnish such information triggers statutory damages of $110 per day, to be imposed at the Court's discretion.  29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1; *see also* 29 U.S.C. § 1132(a)(1)(A) (authorizing participants and beneficiaries to bring a civil action for failure to furnish requested documents under § 502(c)).

In addition to protections afforded to individual plan participants, ERISA also imposes civil liability for breaches of fiduciary duty against the Plan as a whole under § 502(a)(2).  29 U.S.C. § 1132(a)(2)*; see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008).  The scope of suit relates to "the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *LaRue*, 552 U.S. at 253 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)); *see also Varity Corp. v. Howe*, 516 U.S. 489, 511–12 (describing § 502(a)(2) as enforcing "fiduciary obligations related to the plan's financial integrity").

Last, ERISA's "catchall" provision, § 502(a)(3), permits a participant, beneficiary, or fiduciary to seek relief for any "act or practice which violates any provision of this subchapter or the terms of the plan" or to "enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  The purpose of § 502(a)(3) is to allow "equitable relief for injuries

caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512;
*see also Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 384 (4th Cir. 2001).

With this legal framework in mind, the Court addresses each count separately.

### 1.   Breach of Implied Contract/Unjust Enrichment (Count I)

Count I alleges common law breach of implied contract and unjust enrichment stemming
from a health savings account that Mr. Hainey held in the 1980s under the AFTRA Health Plan.
ECF No. 17 ¶¶ 40, 265–268.  Plaintiffs allege that they are entitled to the balance of that account.
Defendants argue the claim is preempted by ERISA.  ECF No. 18-1 at 20–21.

Complete preemption occurs in narrow circumstances, where Congress intended federal
law to both supersede state law and "displace entirely any [analogous] state cause of action."
*Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23
(1983).  "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA
civil enforcement remedy conflicts with the clear congressional intent to make the ERISA
remedy exclusive and is therefore pre-empted."  *Aetna Health, Inc. v. Davila*, 542 U.S. 200,
208–09 (2004) (citing the "expansive" preemption provisions of ERISA § 514).  Section 502(a)
preempts common law contract claims where,  "(1) the plaintiff [has] standing under § 502(a) to
pursue the claim; (2) the claim [falls] within the scope of an ERISA provision that [it] can
enforce via § 502(a); and (3) the claim [is] not capable of resolution without an interpretation of
the contract governed by federal law, *i.e.*, an ERISA-governed employee benefit plan."  *Sonoco
Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003) (citations and
internal quotation marks omitted).

Viewing the allegations most favorably to the Haineys, the claim is clearly preempted.
First, Plaintiffs maintain standing to sue under ERISA because they each were a "participant" or

"beneficiary" under the challenged Plan.  *See* 29 U.S.C. § 1132(a)(1) (providing "[a] civil action

may be brought ... by a participant or beneficiary); *id.* § 1002(7) (defining a "participant" as "any

employee or former employee of an employer, or any member or former member of an employee

organization, who is or may become eligible to receive a benefit of any type from an employee

benefit plan"); *id.* § 1002(8) (defining a "beneficiary" as "a person designated by a participant, or

by the terms of an employee benefit plan, who is or may become entitled to a benefit

thereunder").

Second, the claim falls under ERISA § 502(a)(1)(B), which allows suit to recover

benefits owed under a qualifying plan.  *See* ECF No. 17 ¶ 268.  Here, Plaintiffs allege that

Defendants withheld benefits promised to them under the historical AFTRA Plan.  ECF No. 17

¶¶ 39–43, 72. The gravamen of the claim is a "challenge [to] the administration of the ERISA

plan," which remains "a core § 502(a) claim."  *Prince v. Sears Holdings Corp.*, 848 F.3d 173,

178 (4th Cir. 2017).  Thus, Plaintiffs could seek redress for the claim under ERISA.

Third, the claim cannot be resolved without interpreting the terms of the AFTRA Plan.

Indeed, the Amended Complaint avers that Mr. Hainey had an implied-in-law contract with

AFTRA as to a health benefit account.  ECF No. 17 ¶ 266.  As a result, "[t]his case may only be

resolved by interpreting an 'employee welfare benefits plan,' because the plan at issue here was

created for the purpose of providing [health] benefits."  *Ankney v. Metro.  Life Ins.*, 438 F. Supp.

2d 566, 573 (D. Md. 2006) (finding employee's breach of contract claim completely preempted);

*see also Croxson v. Seneca One Fin., Inc.*, 16-cv-449, 2016 WL 6462039, at *4 (D. Md. Nov. 1,

2016) (finding breach of contract claim for healthcare benefits completely preempted by

ERISA); *C Evans Consulting LLC v. Sortino Fin., LLC*, 603 F. Supp. 3d 246, 257 (D. Md. 2022)

(finding unjust enrichment claim completely preempted by ERISA). ERISA, therefore, preempts the implied breach of contract claim.

But ERISA preemption does not necessarily dictate dismissal.  Rather, "when a court finds that a federal statute completely preempts a state-law claim," complete preemption operates to "transform[ ] the plaintiff's state-law claims into federal claims,' meaning that, effectively, there's 'no such thing as the state action.'" *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 218 (4th Cir. 2021) (quoting *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005)).  The most analogous ERISA claim is one brought pursuant to § 502(a)(1)(B) of ERISA, and so, Count I will be treated as such.  *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002).

On this point, Defendants argue that the claim fails to make plausible even the existence of Mr. Hainey's near forty-year-old account, let alone that Mr. Hainey is entitled to benefits which have "vested" under the plan.  ECF No. 18-1 at 21.  "ERISA places great weight on the written terms of the formal plan documents." *Gable*, 35 F.3d at 857 (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 56 (4th Cir. 1992)).  From the terms of the plan, plaintiffs must make plausible both entitlement to welfare benefits and that the benefits have vested. *Id.* at 855.  The Court agrees that the claim fails on both fronts.  The Amended Complaint avers only that an account existed in the 1980s which is worth an estimated $244,000. *Cf.* ECF No. 18-1 at 21; *see also* ECF Nos. 18-8 & 18-9 (AFTRA Plan documents do not include challenged account).  But these facts do not make plausible that Mr. Hainey is somehow entitled to benefits that long ago had vested.  Furthermore, Plaintiffs seemingly concede that this old health account is "not premised on the existence of any known SAG-AFTRA employee benefit plan."  ECF No. 24-1 at 28.  But if the account does not arise from a health Plan administered by the Defendants,

then it begs the question as to why Plaintiffs are pursing the claim at all.  Because the claim fails

as a matter of law, it will be dismissed.

### 2.   Failure to Take Up Grievance/Appeal (Count II)

Count II alleges breach of fiduciary duty against the Board as Plan administrator.  The

claim recites a litany of failures that fall into two broad categories: (1) failures during the

administrative grievance process to respond to or "monitor" Mr. Hainey's grievance, or to

otherwise provide the Haineys "all information reasonably necessary or appropriate"; and (2) the

denial of coverage related to long term medical treatment Mr. Hainey had received over the

2020–2021 plan years.  ECF No. 17 ¶¶ 269–79.  As relief, Plaintiffs seek "reformation of the

[P]lan to comport with the promise of postretirement welfare benefits" and a surcharge[5] of

$15,000 for "improper substitution of the Medicare supplemental coverage and subsequent

termination of such coverage."

Plaintiffs bring the claim under ERISA's catchall provision, § 502(a)(3).  However, as

Defendants rightly argue, another ERISA section provides a proper cause of action for these

claims, and so Plaintiffs cannot also pursue relief under § 502(a)(3).  ERISA § 502(a)(3) allows

suit only when no other "adequate relief" may be accorded within ERISA's statutory scheme.

*Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 104–05 (4th Cir. 2006) (citing *Varity*, 516 U.S.

at 507–515).  So, if the claim can be pursued under another section of ERISA, then the §

502(a)(3) cause of action necessarily fails.  *Id.* at 106–07.

Turning first to the alleged improper denial of coverage for Mr. Hainey's long term

procedure, the viability of Plaintiffs' claim "rests upon an interpretation and application of an

ERISA-regulated plan."  *Barnett v. Perry*, No. CCB-11-CV-00122, 2011 WL 5825987, at *4 (D.

---

[5] A surcharge is a form of equitable monetary relief.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011).

Md. Nov. 16, 2011) (quoting *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999)).  The Court must first interpret the scope of Plan coverage before it can ascertain whether Plaintiffs' claim is viable.  Thus, as a challenge to the scope of plan coverage, the claim must proceed under ERISA § 502(a)(1)(B).  *Est. of Spinner v. Anthem Health Plans of Virginia, Inc.*, 388 F. App'x 275, 282 (4th Cir. 2010) (quoting *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 715 (4th Cir. 1996)) (internal marks omitted).  Because the claim can properly lie under Section 502(a)(1)(B), it cannot proceed as a § 502(a)(3) claim.

Further, even if the Court considers the claim as brought pursuant to § 502(a)(1)(B), it still fails on the merits.  ERISA § 502(a)(1)(B) allows suit for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §§ 1132(a)(1)(B).  Plaintiffs aver simply that the Plan improperly canceled coverage for a procedure that straddled the 2020 and 2021 Plan years.  But the Amended Complaint does not allege—nor do Plaintiffs dispute—that Mr. Hainey never enrolled in the 2021 Plan.  *See* ECF No. 24-1 at 8.  Thus, any challenge to denial of benefits for 2021 necessarily fails because Mr. Hainey was not a 2021 Plan participant.  *See also* ECF No. 18-4 at 9.

As to the separate challenges to the Plan's claim procedures, ERISA § 502(a)(1)(B) also covers the claim.  *Korotynska*, 474 F.3d at 107; *see also Batten v. Aetna Life Ins. Co.*, No. 3:15CV513, 2016 WL 4435681, at *4 (E.D. Va. Aug. 17, 2016).  Courts may consider under § 502(a)(1)(B) "whether the [plan fiduciary's] decisionmaking process was reasoned and principled," "whether the decision was consistent with the procedural and substantive requirements of ERISA," and "the fiduciary's motives and any conflict of interest it may have." *Id.* (citing *Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43

(4th Cir. 2000)). Here, the Court understands the Haineys are essentially seeking a reinstatement of prior benefits, and thus the relief they desire could be properly obtained under § 502(a)(1)(B). They also do not allege facts that constitute "special circumstances for which equitable relief is uniquely appropriate." *Id.* at 108.

Because a § 502(a)(1)(B) claim squarely encompasses the Plaintiffs' challenges to the Plan's grievance process, the claim may proceed only under that provision. But even construing the claim under this provision, it fails as a matter of law. To the extent that the Haineys seek to "enforce" or "clarify" their rights under the 2021 Plan, including the right to access postretirement benefits they assert were unlawfully taken from them, they have not adequately alleged that the Plan promised them vested health benefits into retirement. *See* ECF No. 1-2 at 1–5; ECF No. 17-2. Stated otherwise, nothing in the Amended Complaint or incorporated documents undermine the proposition that the Defendants were free to change the Plan terms and conditions from year to year. *See Gable*, 35 F.3d at 855; *see also Fitzwater v. CONSOL Energy, Inc.*, No. 1:17-CV-03861, 2020 WL 6231207, at *6–10 (S.D.W. Va. Oct. 22, 2020). Simply because Plaintiffs were dissatisfied with the changes does not give rise to a cause of action. Count II must be dismissed.

### 3. Wrongful Cancellation of Spousal Coverage (Count III)

Count III challenges the denial of Mrs. Hainey's coverage for the 2021 Plan year.[6] ECF No. 17 ¶¶ 280–87. Whether an individual is covered by any given welfare plan "turns on the interpretation of the terms in the plan at issue." *Gross v. St. Agnes Health Care, Inc.*, No.

---

[6] Plaintiffs appear to bring Count III under both § 502(a)(1)(B) and § 502(a)(3). *See* ECF No. 17. However, as previously noted, plaintiffs may not "repackage" § 502(a)(1)(B) claims under § 502(a)(3) when those claims ultimately address a denial of benefits. *Korotynska*, 474 F.3d at 106. As such, relief may not be sought "simultaneously" under the two provisions "when the injury alleged creates a cause of action under § 502(a)(1)(B)." *Frank v. Liberty Life Assurance Co. of Bos.*, 149 F. Supp. 3d 566, 574 (D. Md. 2015) (quoting *Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. CIV.A. DKC 14-2376, 2015 WL 4394408, at *30 (D. Md. July 15, 2015)). The Court will treat the claim as brought only under § 502(a)(1)(B).

CIV.A. ELH-12-2990, 2013 WL 4925374, at *19 (D. Md. Sept. 12, 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (internal marks omitted).  As with all contracts, the Court gives plan terms their plain and ordinary meaning.  *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819–20 (4th Cir. 2013) (quoting *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir.1995)).  It also reads the plan as a whole to ascertain the meaning of the plan terms "in the context of the entire agreement."  *Id.*  Where a term is subject to more than one interpretation, all ambiguity is construed in favor of the plan participant or beneficiary.  *See id.*

Defendants argue that the coverage claim as to Mrs. Hainey fails because it is undisputed that Mr. Hainey, the Plan participant, never enrolled for coverage for the 2021 year.  ECF No. 18-1 at 21.  So Mrs. Hainey, who was eligible for coverage solely because her husband qualified for coverage, cannot pursue any claim for wrongful denial of benefits.  The Court agrees.

The 2021 Plan unambiguously states that coverage for non-working spouses not eligible for Medicare extends only to those married to Senior Performers who "enroll in an individual Marketplace plan through the SAG-AFTRA Health Plan/Via Benefits program."  ECF No. 18-4 at 21.  Further, the Plan makes clear that "coverage for Dependents ends when [the Participant's] coverage terminates."  *Id.* at 31.  Thus, under the plain terms of the 2021 Plan, when Mr. Hainey's coverage as the Plan participant ended in December 2020, so did coverage for Mrs. Hainey as the non-working spouse.

The Haineys do not provide a contrary interpretation for these basic plan terms.  Nor do they dispute that Mr. Hainey did not, in fact, enroll in the 2021 Plan.  *See* ECF No. 24-1 at 8.  Rather, they argue that because Mrs. Hainey filled out several "working spouse" forms and advanced her premiums through June 2021, she was entitled to coverage.  ECF No. 17 ¶¶ 87–91.

But Mrs. Hainey's actions, at best, reflect that she believed she could obtain coverage; they are not probative of whether she could obtain that coverage pursuant to the plain language of the Plan. On this latter point, the Plan terms make clear she could not. Thus, Count III fails as a matter of law.

### 4.   Fiduciary Breach for Wrongful Cancellation of Spousal Coverage (Count IV)

Count IV alleges breach of fiduciary duty pursuant to ERISA § 502(a)(3) premised on the Defendants' cancellation of Mrs. Hainey's coverage. ECF No. 17 ¶¶ 288–99. To the extent the claims are properly covered by Count III, they are dismissed as mere impermissible "repackage[d]" allegations under § 502(a)(3). *See Korotynska*, 474 F.3d at 106 (quoting *Varity*, 516 U.S. at 513).

That said, one allegation appears to survive challenge as it is not otherwise covered by any other ERISA provision. Plaintiffs separately challenge Defendants' failure to return Mrs. Hainey's premiums—prepaid for the first six months of 2021—after retroactively cancelling her coverage. ECF No. 17 ¶¶ 91, 97, 297. Defendants do not argue that the claim fails as a matter of law and for good reason. The Fourth Circuit has recognized that plaintiffs can recover refunds under § 502(a)(3) for "premiums wrongfully withheld … for coverage … never actually had." *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 179, 182–83 (4th Cir. 2012) (holding that remedies beyond premium refunds, including surcharge and equitable estoppel, may also be available where a fiduciary has breached its duty).

Instead, Defendants contend that because Plaintiffs failed to exhaust administrative remedies by first raising the issue with the Plan administrator, the claim must be dismissed. ECF No. 26 at 10. However, the claim does not turn on the Plan administrator's "denial of benefits," but is grounded in an alleged breach of fiduciary duty arising from the administrators' improper

withholding of premiums while also denying coverage.  *See Hall v. Tyco Int'l Ltd.*, 223 F.R.D. 219, 237 (M.D.N.C. 2004) (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)).  Thus, on this narrow liability theory, the claim survives challenge.  Count IV is dismissed as to all allegations save for the alleged breach of fiduciary duty arising from the Plan's failure to return Mrs. Hainey's prepaid premiums for the first half of the 2021 Plan year.

### 5.   Refusal to Supply Requested Information (Count V)

Count V avers that Defendants failed to supply Plan documents that Mr. Hainey requested in the October 2020 grievance letter and subsequent correspondence.  ECF No. 17 ¶¶ 300–306.  The letters broadly requested "[a]ll Plan documents," as well as "all records relating to the Taft-Hartley trust where [Mr. Hainey's] employer contributions are maintained"; various financial and regulatory documents, including copies of annual financial reports and audits for the prior three calendar years; "[a]ny collective bargaining agreements" in effect during Mr. Hainey's years of covered employment; the statement of investment policy for the Plan; "[a]ll Trust Agreements"; and "[a]ll other documents that [have] informed your decision to terminate [Mr. Hainey's] participation in the group SAG-AFTRA Health Plan."  ECF No. 1-2 at 11–12, 17. ERISA § 502(c)(1)(B) requires the Plan to provide certain enumerated documents to ensure that an individual "knows exactly where he stands" regarding the Plan's terms and conditions. *Firestone Tire*, 489 U.S. at 103 (citing 29 U.S.C. § 1132(c)(1)(B)).  Failure or refusal to supply those documents within 30 days subjects the Plan administrator to pay up to $110 per day in statutory damages, at the Court's discretion.  *See* 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1.

A benefit plan, however, is not required to produce any and all documents simply because a plan participant requests them.  *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654 (4th

Cir. 1996) (noting that "if Congress had intended [for the statute] to encompass all documents that provide information about the plan and benefits, Congress could have used language to that effect").  Rather, the statute clearly specifies that the covered documents are "the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

Nor does the Plan administrator have any obligation to supply historic documents when they are "not necessary to determine one's rights under the current plan."  *Perkins v. US Airways, Inc.*, No. 6:14-CV-2577-BHH, 2017 WL 1196805, at *9 (D.S.C. Mar. 31, 2017), *aff'd*, 709 F. App'x 188 (4th Cir. 2018) (quoting *Hartman v. Dana Holding Corp.*, 978 F. Supp. 2d 957, 968 (N.D. Ind. 2013)).  Only the latest versions of the plan's SPD and annual report are required.  29 U.S.C. § 1024(b)(4); *see Murphy v. Int'l Painters & Allied Trades Industry Pension Fund*, No. 3:13-CV-28760, 2015 WL 5722809, at *8 (S.D.W. Va. Sept. 29, 2015) (holding "ERISA simply does not require plan administrators to provide out of date versions of a plan"); *see also Perkins*, 2017 WL 1196805, at *9 (finding duty to provide historical plan documents "almost certainly never existed" where "such historical documents were not operative, not the 'latest' version of the SPD, and not expressly relied upon by a claims administrator in the denial of benefits").

In the October 2020 grievance, Mr. Hainey did request certain covered documents, to include the Plan's "full annual financial report," as well as the "Form 5500," which is the Plan's annual report to the Department of Labor, and several of the Plan's governing documents.  ECF No. 1-2 at 11–12.  The Plan administrator provided Plaintiffs with those documents, albeit in October 2021, more than a year after the request was issued, and after this suit had been filed.

*See* ECF No. 17-3 at 2–3.  But, even then, the administrator did not furnish Mr. Hainey with the pertinent 2020 SPD, instead providing him with 2021 SPD which was then in force.  *See* ECF No. 17 ¶ 303; ECF No. 24-1 at 14.  Thus, the Amended Complaint recites a plausible claim as to the 2020 SPD, which Mr. Hainey requested and to which he was entitled but never received, as well as those statutorily mandated documents that were not timely provided.

Defendants argue that the claim should nonetheless be dismissed for lack of standing. Specifically, Defendants contend that the Amended Complaint fails to make plausible any injury in fact arising from their failure to supply the 2020 Plan documents.  *See* ECF No. 18-1 at 27–29. Standing implicates a court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1); *see Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017); *see also Carrero v. Farrelly*, 310 F. Supp. 3d 542, 545–56 (D. Md. 2018).  A party's standing to maintain an action "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution.  *Davis v. F.E.C.,* 554 U.S. 724, 733 (2008) (citations omitted).  Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Overbey v. Mayor of Balt.,* 930 F.3d 215, 227 (4th Cir. 2019) (citation omitted).

In a facial challenge to standing, the plaintiff is afforded the same procedural protections that exist when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  The Court must "accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party."  *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013).  Standing, however, may not be created through the court "embellishing otherwise deficient allegations."  *S. Walk at*

*Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 179 (4th Cir. 2013) (quoting *Whitmore v. Arkansas*., 495 U.S. 149, 155–56 (1990)).  The Court cannot "take account of allegations in the complaint labeled as fact but that constitute nothing more than legal conclusions or naked assertions."  *David*, 704 F.3d at 333 (internal quotation marks omitted).

Exhibits attached to the complaint may be considered in evaluating a motion to dismiss for lack of standing.  *S. Walk*, 713 F.3d at 182 (citing Fed. R. Civ. P. 10(c)); *see also Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).  But if a conflict arises between the complaint allegations and an exhibit, the exhibit controls.  *S. Walk*, 713 F.3d at 182 (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  To survive a facial standing challenge, the complaint facts must make plausible that plaintiff (1) "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection exists between the claimed injury and defendant's wrongdoing and (3) that the injury can be redressed through this suit.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted).

The Amended Complaint, viewed most favorably to the Haineys, makes plausible that they were "denied access to helpful information subject to disclosure under a statute." *McFarlane v. First Unum Life Ins. Co*., 274 F. Supp. 3d 150, 162–63 (S.D.N.Y. 2017) (finding information injury where plaintiff "lost her long-term disability benefits and claim[ed] that she has been unable to reclaim them without her plan documents").  Mr. Hainey, as a 2020 Plan participant, viewed the impending changes to the Plan as adverse to him.  In the 2020 grievance, he framed those expected harms in how proposed changes to the Plan would breach the duties

22

owed to him and other Plan participants per the 2020 SPD.  ECF No. 1-2 at 9.  Accordingly, failure to furnish the 2020 Plan document would indeed deprive Mr. Hainey of that which the statute affords him; to "know where he stands" as a Plan participant.  Mr. Hainey has standing to pursue the claim.

Alternatively, Defendants suggest that the claim fails because the Haineys in fact suffered no harm.  Because the documents on which the Haineys ground their claim are "all public" and were not necessary for the Haineys to file suit, say Defendants, the claim must be dismissed. ECF No. 18-1 at 29.  Defendants miss the point of the duty to provide the requisite plan documents.  Section 502(c)(1)(B) does not require any specific showing of need or even materiality, because ERISA recognizes the need to protect a participant's right to "know where he stands" under the Plan.  *Firestone*, 489 U.S. at 103.  Plaintiffs have plausibly demonstrated that despite this right, Defendants failed to provide the applicable 2020 Plan document as requested.  This is sufficient to make the claim plausible.  The motion to dismiss Count V is denied, but only as to those documents that the Haineys requested and for which the Plan administrator was legally bound to furnish.

### 6.  Fiduciary Breach for Maladministration of Plan Funds (Count VI)

The Amended Complaint alleges in Count VI that the Board of Trustees breached their fiduciary duties to the Plan, in violation of ERISA § 502(a)(2).  ECF No. 17 ¶¶ 307–12. Section 502(a)(2) essentially permits civil suit for fiduciary breaches that lead to plan losses.  29 U.S.C. § 1132(a)(2); *see also id.* § 1109(a).  The pertinent fiduciary duties "relate to the proper management, administration, and investment of fund assets, with an eye toward ensuring that the benefits authorized by the plan are ultimately paid to participants and beneficiaries." *LaRue*, 552 U.S. at 253 (citations and internal quotation marks omitted).  Notably, under § 502(a)(2), a

plaintiff cannot "recover personal damages for misconduct" but must instead "seek recovery on behalf of the plan." *David*, 704 F.3d at 332 (4th Cir. 2013) (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007)).

As with Count V, Defendants argue that the Haineys lack standing to sue—here, in a representative capacity[7]—because they have not made plausible any injury-in-fact. To show standing under § 502(a)(2), the alleged injury must be "causally related to the conduct [plaintiffs] seek[ ] to challenge on behalf of the Plan." *Peters*, 2 F.4th at 221 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009)). An alleged injury that is "too speculative" will not lie. *Loren*, 505 F.3d at 609 (finding no standing where plaintiffs alleged healthcare plan administrator negotiated hospital reimbursement rates more favorable to certain participants than others, and that, if the administrator had not done so, participant contributions "probably would have been less had [Defendant] not engaged in the conduct").

The badges of Plan mismanagement, as asserted by Plaintiffs, fall into three broad categories: (1) a kickback scheme perpetrated by AFTRA management from 2009–2015[8]; (2) inconsistencies in certain regulatory reports; and (3) questionable business practices, including outsized executive compensation levels and other Plan expenses. ECF No. 17 ¶¶ 116–264. Based on these, the Plaintiffs ask the Court to void the 2021 SAG-AFTRA Health Plan, remove

---

[7] The Court questions whether the Haineys, as self-represented plaintiffs, may sue in a representative capacity on behalf of the Plan. But because the Court finds that the Haineys lack standing, it need not take up the issue here. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (holding *pro se* litigant is "not the real party in interest" in claims brought under § 502(a)(2) on behalf of the plan); *see also Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 244 (4th Cir. 2020) (holding *pro se* litigant may not pursue qui tam False Claims Act suit because "the relator party has an interest, [but] it is not the sole interest at stake").

[8] The executive at the center of the kickback scheme pled guilty in July 2019. ECF No. 17 ¶ 138; *see United States of America v. Enrico Rubano*, Case No. 1:17-cr-000169-JGK, ECF No. 226. As Plaintiffs acknowledge in a subsequent filing, the Plan has since been fully compensated for any losses as a result of the wrongdoing. ECF No. 31-2 ¶ 190.

certain members of the Board of Trustees, and provide an award to the Plan in the sum equaling the Plan's losses pursuant to a forensic audit.

The allegations suffer from a host of problems.  To begin, many are barred by ERISA's six-year statute of limitations.  29 U.S.C. § 1113; *see Healey v. Abadie*, 143 F. Supp. 3d 397, 403 (E.D. Va. 2015).  Others, such as generalized "mismanagement," are too speculative and nondescript to properly assess.  As for the remaining averments, nothing in the Amended Complaint makes plausible how the alleged breaches caused any injury to Plaintiffs or the Plan.  Mere recitation of bad practices alone does not make plausible sufficient injury to confer standing.  *C.f. In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216–18 (4th Cir. 2008); *Moore v. Virginia Cmty. Bankshares, Inc.*, No. 3:19-CV-45, 2023 WL 2714930, at *6–7 (W.D. Va. Mar. 30, 2023).  Accordingly, because the Amended Complaint has failed to plausibly aver sufficient injury in fact arising from the claimed mismanagement, Count VI must be dismissed.

In sum, the Court has dismissed Counts I through III for failure to state a claim and Count VI for failure to state a claim and lack of standing.  Count IV is dismissed because it fails to make a plausible claim except as to the narrow allegations regarding Mrs. Hainey's prepaid premiums.  Likewise, Count V is dismissed, except as to those requested documents that were required to be provided under ERISA and that were either provided untimely or not at all.

Because Counts IV and V survive challenge on a narrowed theory of liability, the Court must address Defendants' motion to strike Plaintiffs' jury trial demand.  *See* ECF No. 18-1 at 29–30.  ERISA does not expressly address whether plaintiff is entitled to a jury trial.  *See Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985).  But because ERISA provides essentially equitable relief for which jury trials typically do not lie, ERISA claims are tried before the Court.  *Wladowski v. Kaydon Ring & Seal, Inc.*, No. CV RDB 06-506, 2006 WL

8456815, at *3 (D. Md. Dec. 12, 2006) (citing *Berry*, 761 F.2d at 1007); *Williams v. Centerra Grp., LLC*, 579 F. Supp. 3d 778, 781 (D.S.C. 2022); *see also Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 222 (4th Cir. 2005); *Scarinci v. Ciccia*, No. CIV.A.93-CV-3662, 1994 WL 675244, at *1 (E.D. Pa. Nov. 22, 1994).  Defendants' motion to strike the jury demand is granted.

The Court next turns to the Haineys' motion to file a Second Amended Complaint.  ECF No. 31.

## IV.    Motion to File Second Amended Complaint

Plaintiffs move to amend Counts II through VI to supposedly "cure perceived deficiencies . . . relating to injury and causation."  ECF No. 31 at 2.  They also add Count VII. Defendants oppose amendment, arguing that the new alleged facts do not save the claims, rendering amendment futile.  ECF No. 34 at 5–6.  Although the Court should grant leave to amend "freely ... when justice so requires," Fed. R. Civ. P. 15(a)(2), futility of the proposed claim remains a sound basis to deny the amendment request.  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  A claim is futile when it is "clearly insufficient or frivolous," such that it cannot survive a motion to dismiss.  *Whitaker v. Ciena Corp.*, No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018); *see also Kerrigan v. Bd. of Educ. of Carroll Cty.*, No. JKB-14-3153, 2016 WL 470827, at *3 (D. Md. Feb. 8, 2016).

As to Count II, the Haineys now suggest that Defendants' failure to provide Plan documents per the October 2020 grievance letter and subsequent correspondence prevented Mr. Hainey from promptly purchasing supplemental health coverage "during open enrollment in November/December 2020."  ECF No. 31-2 ¶ 318.  The new allegations, however, are not sufficient to state a claim.  At best, any suggestion that the Plan's failure to produce requested

documents affected Plaintiffs' ability to obtain healthcare is more appropriately considered under Count V, which will go forward. The motion to amend Count II is therefore denied.

In Count III, Plaintiffs recast this claim as one for wrongful retention of Mrs. Hainey's premium benefits pursuant to § 502(a)(1)(B) and § 502(a)(3). The Court has already determined that this claim properly survives in Count IV. The proposed new count, therefore, is duplicative and so amendment is denied.

As to Count IV, Plaintiffs now argue that their "confusion" as to Mrs. Hainey's eligibility for coverage—even absent Mr. Hainey's enrollment—was a result of the Plan's failure to clearly communicate its terms. *Id.* ¶ 340. The Court has already determined that Mrs. Hainey was not eligible for coverage as a result of the plain terms of the Plan. Further, allegations that this confusion followed from the Plan's miscommunication is not plausible as a matter of law. ERISA requires fiduciaries "to abide by the general duties of loyalty and care that are firmly rooted in the common law of trusts." *Peters*, 2 F.4th at 228. This imposes on the fiduciary "an affirmative duty to inform when the trustee knows that silence might be harmful." *Griggs*, 237 F.3d at 380 (quoting *Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)). But by the same token, fiduciaries are not expected "to ascertain on an individual basis whether each [participant] … understands the collateral consequences of his or her particular election." *Id.* at 381.

Viewing the proposed amendments most favorably to Plaintiffs, nothing makes plausible that Defendants failed to communicate Plan changes to the Haineys. The Defendants in writing informed the Plaintiffs of proposed Plan changes and instructed them on how they could receive more information online. *See* ECF Nos. 18-10, 18-11, 18-12. And no other allegations make

plausible that the Defendants misled the Haineys about the 2021 Plan terms through "silence." Accordingly, the proposed amendment is denied.

As to Count V, Plaintiffs add only a more definite statement of what they believe they are owed in statutory penalties, and that the failure to furnish requested documents caused them "frustration" and "vexation." *See* ECF No. 31-2 ¶¶ 346, 349.  The proposed amendment does nothing to advance the claim because emotional damages are unavailable to them. *See Int'l Union, United Mine Workers of Am. v. CONSOL Energy, Inc.*, 465 F. Supp. 3d 556, 575–76 (S.D.W. Va. 2020) (quoting *Evans v. Akers*, 534 F.3d 65, 73 (1st Cir. 2008)).  The statutory penalty is clear under the law and so the added penalty language is superfluous.  To the extent that Plaintiffs attempt to argue that failure to receive the requested documents further led them to miss out on the opportunity to maintain their coverage under Consolidated Omnibus Budget Reconciliation Act ("COBRA"), this argument fails because Plaintiffs have not adequately alleged that they qualified for COBRA coverage. *See* 11 U.S.C. § 1163.  The additional allegations, in short, do nothing to advance the claim and so amendment is denied.

Also for Count VI, Plaintiffs add allegations that lean into the "fraud and kickback scheme" as grounds for the maladministration claim.  ECF No. 31-2 ¶ 354.  Plaintiffs aver, without factual support, that the losses stemming from the scheme prompted Defendants to "cut" them and other retirees from the Plan in 2021. *Id.*  This supposed link amounts to no more than speculation.  The proposed claim is still futile.  Amendment is denied.

Last, Plaintiffs attempt to add a new count (Count VII) against the Board of Trustees for breach of co-fiduciary duty in violation of ERISA § 405(a).  ECF No. 31-2 ¶¶ 356–61.  Section 405(a) imposes liability on a fiduciary who (1) "participates knowingly in, or knowingly undertakes to conceal" an act or omission of another fiduciary while "knowing such act or

omission is a breach," (2) fails to comply with his own fiduciary duties under § 404(a)(1) and thus enables another fiduciary to commit a breach, or (3) knows a breach has occurred but fails to make "reasonable efforts" to remedy it.  29 U.S.C. § 1105(a).  The proposed claim merely alleges that the Board of Trustees knew of "each breach" stemming from "maladministration resulting in plan losses" and that they either knowingly participated in the breaches or took no steps to remedy the same.  ECF No. 31-2 ¶ 358.  As the sum total of the new claim, it amounts to nothing more than bare legal assertions couched as factual allegations.  *See Atwood v. Burlington Indus. Equity, Inc*., No. 2:92CV00716, 1994 WL 698314, at *15 (M.D.N.C. Aug. 3, 1994) (dismissing similar ERISA § 405(a) claims as inadequate).   Thus, the claim is futile for this reason alone.  Additionally, because no viable claim exists for breach of fiduciary duty arising from the "maladministration" of the plan under ERISA § 502(a)(2), this derivative claim also must fail.  *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) (finding ERISA co-fiduciary duty is a derivative claim that fails when "the underlying duty of prudence claim fails").

In the end, the proposed Second Amended Complaint pleads no new facts or theories of liability that articulate a viable claim.  Because none of the amended allegations survive challenge, amendment would be futile.  The Court denies the motion for leave to file the Second Amended Complaint.

## V.   Dismissal With or Without Prejudice

Whether to dismiss claims with or without prejudice remains within the discretion of the district court.  *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citing *180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)).  Generally, the plaintiff should be afforded the opportunity to amend or dismissal should be without prejudice.

*See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) ("Where no opportunity is given to amend the complaint, the dismissal should generally be without prejudice."); *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013) (holding same).  However, "dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim." *Weigel*, 950 F. Supp. 2d at 825–26.

> As the Fourth Circuit has explained:
>
> While a potentially meritorious claim ..., should not be unqualifiedly dismissed for failure to state a claim unless its deficiencies are truly incurable, such an unqualified dismissal is entirely proper when the court has reviewed the claim and found it to be substantively meritless.  Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation.

*McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) (internal citation omitted).

Plaintiffs have already amended their Complaint once, and the second attempt has been an exercise in futility.  The lion's share of claims in the Amended Complaint fail as a matter of law, and Plaintiffs did not succeed in curing the defects with the proposed Second Amended Complaint.  The Court sees no point in permitting further amendment.  Accordingly, all counts, save for the narrow liability theories that survive under Counts IV and V, are dismissed with prejudice.

## VI.   Conclusion

For the foregoing reasons, Plaintiffs' Motion to Strike Exhibits is DENIED; Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART; Plaintiffs' Motion for Leave to File the Second Amended Complaint is DENIED.  A separate Order follows.


_____5/24/23_____                    _____/s/_____
Date                                                                          Paula Xinis
                                                                                  United States District Judge

30